1  ROCKARD J. DELGADILLO, City Atty. (SBN (125465x)
   LAURIE RITTENBERG, Asst. City Atty. (SBN 106683)
2  **JOHN A. CARVALHO,** Deputy City Atty. (SBN 189895)
   **ADENA M. HADAR,** Deputy City Atty. (SBN 228857)
3  john.carvalho@lacity.org; adena.hadar@lacity.org
   200 North Main Street, Room 916
4  Los Angeles, California 90012
   Telephone: 213.473.6858
5  Facsimile: 213.473.6818

6
7  Attorneys for Defendants CITY OF LOS ANGELES,
   KAREN KALFAYAN, ROCKARD J. DELGADILLO, and
   CITY COUNCIL OF THE CITY OF LOS ANGELES
8
9
                  **UNITED STATES DISTRICT COURT**
10
11                **CENTRAL DISTRICT OF CALIFORNIA**
12
13 FORTUNA ENTERPRISES, L.P. d/b/a        ) CASE NO.:  CV08-04373 SVW
                                           ) (MANx)
14 THE LOS ANGELES AIRPORT                 )
                                           )
15 HILTON HOTEL AND TOWERS, a              ) **MEMORANDUM OF POINTS AND**
                                           ) **AUTHORITIES IN OPPOSITION**
16 Delaware limited partnership,           ) **TO PLAINTIFF FORTUNA**
                                           ) **ENTERPRISES, L.P.'S**
17              Plaintiff,                 ) **APPLICATION FOR A**
                                           ) **TEMPORARY RESTRAINING**
18      vs.                                ) **ORDER**
                                           )
19                                         )
   THE CITY OF LOS ANGELES et al.,         )
20                                         )
                                           )
21              Defendants.                )
                                           )
22                                         )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )
                                           )
26                                         )
                                           )
27                                         )
                                           )
28 _____ )

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     BACKGROUND FACTS .......................................................................2

III.    ARGUMENT...........................................................................................5

  A.   LAX Hilton Is Not Likely To Succeed On The Merits Of
      Its National Labor Relations Act Preemption Claim ....................5

    1.   Although The NLRA Has No Express Preemption Clause,
        The Supreme Court Has Nevertheless Articulated Two
        NLRA Preemption Principles, And LAX Hilton Cannot
        Show That The Ordinance Meet Either Of These Two Tests .................5

       i.   *Garmon* Preemption Does Not Apply.......................................6

       ii.  *Machinists* Preemption Does Not Apply ................................8

    2.   Courts Have Held Legislation Not Preempted By The
        NLRA When The Legislation Is Established Pursuant To
        Public Entities' Regulatory Authority ......................................10

    3.   The Authority Upon Which LAX Hilton Relies To Ostensibly
        Support Its Preemption Argument Is Not Only Distinguishable,
        But Also Has Been Criticized And Narrowed Within This Circuit .....12

  B.   LAX Hilton Is Not Likely To Succeed On The Merits Of Its
      Equal Protection Claim ...............................................................13

i

      1.      The Classifications Are Rationally Related to a Legitimate Government Interest........................................................................15

2.     Plaintiff's Skepticism Concerning The "True" Motive Behind The Ordinance Is Irrelevant..........................................................18

C.    LAX Hilton's Claim Is Barred By Claim-Splitting And Res Judicata As Well As Laches .................................................19

      1.      LAX Hilton's Current Challenge To The Ordinance Is Its Second Attempt To Invalidate The Ordinance, And As Such, It Is Barred Under The Doctrines Of Claim-Splitting And Res Judicata .................................................................................19

      2.      To The Extent The Action Is Even Permissible, LAX Hilton Inexcusably Delayed Bringing Its Claim................................21

D.    LAX Hilton Cannot Show Serious Irreparable Injury And The TRO APPLICATION Should Be Denied As A Result ......................................22

E.    LAX Hilton's Alleged Concern With Retroactivity Is Unripe...................23

F.    The Balance Of Hardships Weigh In Favor Of Enforcement Of The Ordinance..........................................................24

IV.    CONCLUSION ........................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. California Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007). ................19

*Alcantara v. Allied Props.*, 334 F. Supp. 2d 336 (E.D.N.Y. 2004) ................................7

*Associated Builders & Contractors. of S. Cal. v. Nunn*,

   356 F.3d 979 (9th Cir. 1988) ...................................................... 5, 6, 11, 13

*Bechtel Construction Inc. v. United Brotherhood of Carpenters & Joiners*

   *of America*, 812 F.2d 1220 (9th Cir. 1987) ...............................................13

*Building and Construction Trades Council v. Associated Builders*

   *and Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993) ...........................................11

*Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2004)................................ 5, 8-9

*Cent. State Univ. v. American Ass'n of Univ. Professors*, 526 U.S. 124 (1999)...........17

*Chamber of Commerce of the United States v. Reich*,

   74 F.3d 1322 (Fed. Cir. 1996) ...........................................................12

*Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995)...................................12

*City of New Orleans v. Dukes*, 427 U.S. 297 (1976)......................................................15

*Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) ...................................13

*Clements v. Airport Authority of Washoe County*, 69 F.3d 321 (9th Cir. 1995). ........19

*Costantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir. 1982)............................20

*Dandridge v. Williams*, 397 U.S. 471 (1970)................................................................16

*Dillingham Constr. N.A. v. County of Sonoma*, 190 F.3d 1034 (9th Cir. 1999)..........10

*Faith Center Church Evangelistic Ministries v. Glover*,

   462 F.3d 1194 (9th Cir. 2006) .............................................................2

*FCC v. Beach Communications, Inc.*, 508 U.S. 307 (1993)........................ 13-14, 17, 18

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987).................................................. 7-8

*Golden Gate Rest. Ass'n v. City of San Francisco*,

   512 F.3d 1112 (9th Cir. 2008) ............................................................25

*Heller v. Doe*, 509 U.S. 312 (1993) ..................................................... 13, 17-18

*Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res.*, 390 F.3d 206 (3rd Cir. 2004) ....................................12

*In re Int'l Nutronics, Inc.*, 28 F.3d 965 (9th Cir. 1994) ...............................................19

*Int'l Paper Co. v. Town of Jay*, 928 F.2d 485 (1st Cir. 1996) .........................................11

*Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030 (9th Cir. 2000). ........................................22

*Legal Aid Soc'y v. City of New York*, 114 F. Supp. 3d 204 (S.D.N.Y. 2000)...............11

*LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150 (9th Cir. 2006) ....................2

*Lodge 76, Int'l Ass'n. of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976)..................................................6

*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) .........................................................25

*Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197 (9th Cir. 1980) ..........................................................................2

*Malone v. White Motor Corp.*, 435 U.S. 497 (1978) .......................................................8

*Metro. Life Ins. Co. v. Mass. Travs. Ins. Co.*, 471 U.S. 724 (1985) ...........................6-8

*Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61 (1913) ....................................16

*Nat'l Football League Properties, Inc. v. Coniglio*, 554 F. Supp. 1224 (D.D.C. 1983) ..........................................................................2

*National Broadcasting Co., Inc. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995).....................9

*New England Health Care Employees Union v. Rowland*, 221 F. Supp. 2d 297 (D. Conn. 2002) ........................................................12

*No. Ill. Chap. Associated Builders & Contractors v. Lavin*, 431 F.3d 1004 (7th Cir. 2005) .....................................................................11

*RUI One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2003) .......................15, 19

*S. Pac. Co. v. Bogert*, 250 U.S. 483 (1919) .................................................................21

*Sampson v. Murray*, 415 U.S. 61 (1974). ......................................................................22

*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959) ................................6

*St. Thomas – St. John Hotel Inc. v. Gov. of Virgin Islands,*
  218 F.3d 232 (3rd Cir. 2000)...........................................................7

*Strickland v. City of Albuquerque*, 130 F.3d 1408 (10th Cir. 1997) ...........................20

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985)...........................23

*U.S. O'Brien*, 391 U.S. 367 (1968) ...........................................................11

*U.S. Railroad Ret. Bd. V. Fritz* 449 U.S. 166 (1980)...........................................18

*Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996) ...............................9, 15, 17

*Washington Serv. Contractors Ass'n. v. Dist. Of Columbia,*
  54 F.3d 811 (Fed. Cir. 1995) ...........................................................7

*Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955) ...................................16

*Woodfin Suite Hotels, LLC v. City of Emeryville,*
  2006 U.S. Dist. LEXIS 64827 (N.D. Cal. 2006)...........................................8

**California Cases**

*Rubalcava v. Martinez*, 158 Cal. App. 4th 563 (2007) ....................................... 1-4, 20

**Statutes**

Cal. Const. art. XI, § 7 ...........................................................7

Cal. Lab. Code § 351...........................................................22

Cal. Lab. Code § 1205(b)...........................................................7

Los Angeles Municipal Code ("L.A.M.C.") § 104.101 *et seq* ...........................*passim*

L.A.M.C. § 104.101. ...........................................................15, 23

L.A.M.C. § 104.103 ...........................................................4, 23

L.A.M.C. § 104.115. ...........................................................10

L.A.M.C. §§ 104.102 and 104.104...........................................................4

L.A.M.C. §§ 104.110-111 ...........................................................8

**Other Authorities**

Peter Dumon, *A'Living Wage' Is Money In The Bank: A Hotel Owner Urges His Fellow LAX-Area Hoteliers To Stop Fighting The City's Living Wage Ordinance*, L.A. TIMES, June 11, 2008 at A23..............................................................2

Ronald D. White, *Energy; Pessimism Rises As Oil, Gas Prices Set Record*, L.A. TIMES, July 1, 2008 at C1 .............................................................24

*Wasted Energy; Ethanol Is Bad Economic Policy And Bad Energy Policy—But It Should Teach Congress A Good Lesson*, L.A. TIMES, July 3, 2008 at A24. ..............25

Pet. for Review to Cal. Sup. Ct. in *Rubalcava*, 2008 CA S. Ct. Briefs LEXIS 255...20

Reply re Pet. For Review to Cal. Sup. Ct. in *Rubalcava*, 2008 CA S. Ct. Briefs LEXIS 257 .............................................................21

Defendant City of Los Angeles ("City") hereby opposes the APPLICATION FOR TEMPORARY RESTRAINING ORDER ("TRO APPLICATION" or "APPLICATION") filed by Fortuna Enterprises, L.P. d/b/a The Los Angeles Airport Hilton Hotel And Towers, a Delaware Limited Partnership ("Plaintiff" or the "LAX Hilton").

## I.    INTRODUCTION

Through the instant case, LAX Hilton attempts to take "two bites at the apple"—to challenge the very same ordinance it earlier attacked unsuccessfully.   LAX Hilton seeks to prevent the enactment and enforcement of the Airport Hospitality Enhancement Zone Ordinance (the "Ordinance"), which is the City's living wage ordinance affecting airport area hotels.  Although for three months LAX Hilton was aware of the Court's rejection of its challenge[1] and that the Ordinance would take effect within 31 days of its publication, LAX Hilton waited until one (1) day before a holiday weekend to give notice of its APPLICATION and then two (2) days after effectuation of the Ordinance to bring its instant claim for emergency injunctive relief.  LAX Hilton should not be rewarded for manufacturing its own sense of urgency.  This is especially the case given that, with its ultimately unsuccessful election challenge, LAX Hilton had obtained an injunction that already delayed enactment of the Ordinance and payment of living wages to hundreds of hotel workers **for over-one-year**.[2]

---

[1]    The California Supreme Court denied the petition for review in or around April 9, 2008 of *Rubalcava v. Martinez*, 158 Cal. App. 4th 563 (2007), which is the election or referendum challenge to the Ordinance that is referenced herein.

[2]    The City sought, and was granted, an expedited appeal of *Rubalcava* through a motion for calendar preference.  Tellingly, although affected hotels,

In any event, LAX Hilton's TRO APPLICATION also fails on the merits.  LAX Hilton cannot, and has not, demonstrated (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury if preliminary relief is not granted, (3) a balance of the hardships in its favor, or (4) advancement of the public interest.[3]  *See Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197, 1200-01 (9th Cir. 1980).  Accordingly, LAX Hilton's APPLICATION must be denied.

## II.    BACKGROUND FACTS

On November 22, 2006, the Los Angeles City Council (the "Council") adopted ordinance No. 178082, entitled "Hotel Worker Living Wage Ordinance" (HLWO).  *See Rubalcava,* 158 Cal. App. 4th at 568.  This ordinance

---

including LAX Hilton, acted together to sue the City in the referendum challenge, only LAX Hilton brings the present action.  The other hotels have apparently accepted the Ordinance and its living wage obligations.  *See, e.g.* Peter Dumon, *A 'Living Wage' Is Money In The Bank: A Hotel Owner Urges His Fellow LAX-Area Hoteliers To Stop Fighting The City's Living Wage Ordinance*, L.A. TIMES, June 11, 2008 at A23.

[3]      The factors considered by the court in assessing whether to grant a request for a temporary restraining order are similar to the factors examined by the court in determining the merits of a motion for a preliminary injunction.  *See Nat'l Football League Properties, Inc. v. Coniglio*, 554 F. Supp. 1224, 1226 (D.D.C. 1983).  Specifically, under Federal Rule of Procedure 65, *Faith Center Church Evangelistic Ministries v. Glover*, 462 F.3d 1194, 1201-02 (9th Cir. 2006), and *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006), in ruling on an application for temporary restraining order, courts use a sliding scale comparing (1) a combination of a party's probable success on the merits and the possibility of irreparable injury, with (2) whether serious questions are raised and if the balance of hardships tips sharply in that party's favor.

set minimum wage standards that exceeded California's minimum wage requirements for certain hotels located within the Gateway to Los Angeles (Century Corridor) Property Business Improvement District ("PBID"), which is adjacent to the Los Angeles International Airport ("LAX").  *Id*. at 567-68.

On December 29, 2006, a group of hotel operators in the Century Corridor PBID and others submitted a referendum petition against the HLWO containing sufficient signatures to satisfy the requirements of the Los Angeles City Charter.  As a result, the City Council had to either submit the HLWO to a popular vote or repeal it.  *Id*. at 568.

On January 31, 2007, the City Council repealed the HLWO.  On February 21, 2007, it approved ordinance No. 178432, entitled "Airport Hospitality Enhancement Zone Ordinance" (the "Ordinance").  *Id*.  The Ordinance designates the area bounded by the PBID as a Airport Hospitality Enhancement Zone ("Zone"), and commits the City to make a number of improvements within the Zone, including:

- A workforce training program and English as a Second Language courses for hotel workers;
- A program to market hotels;
- A study into construction and financing of a conference center;
- A study to reduce business taxes;
- $ 1 million in street improvements;
- Construction of new sidewalks to facilitate pedestrian access from Zone hotels to public transit;
- A  new recycling and waste diversion program;
- Establishment of remote hotel check-in facilities; and

3

- A study to extend electric power subsidies to Zone businesses or create new subsidies.

Los Angeles Municipal Code ("L.A.M.C.") § 104.103.

The Ordinance also sets minimum wage requirements for hotel workers, and requires that hotel workers be provided a minimum number of compensated and uncompensated days off per year.  Only those hotels within the Zone with 50 or more guest rooms are required to meet these standards.  In addition, the Ordinance permits a hotel to avoid the wage requirements if it demonstrates that the requirements are significantly burdensome or that its workers have agreed in a collective bargaining agreement to a waiver. L.A.M.C. §§ 104.102 and 104.104.

On February 28, 2007, area hotels, including LAX Hilton, filed a petition for mandamus and injunctive relief in Los Angeles Superior Court against the City Council, Frank Martinez, in his official capacity as City Clerk of the City of Los Angeles, and Rockard J. Delgadillo, in his official capacity as City Attorney of the City of Los Angeles contending that the City Council's conduct in connection with the Ordinance contravened their rights regarding referenda and initiatives under the California Constitution.  The petition also sought an injunction to prevent the City Clerk from giving effect to the Ordinance by publishing it.  On February 28, 2007, the court issued an alternative writ of mandate and order to show cause directing the City to refrain from publishing the HLWO, and on May 2, 2007, the petition was granted.  The City appealed. *Rubalcava*, 158 Cal. App. 4th at 568-569.

On December 27, 2007, the California Court of Appeal, in a published opinion, reversed the trial court and remanded with directions to vacate the order enjoining publication of the Ordinance and enter a new order

4

denying the petition for a writ of mandate.  Judgment pursuant to the directions of the Court of Appeal was entered on June 2, 2008.

### III.   ARGUMENT

**A.   LAX Hilton Is Not Likely To Succeed On The Merits Of Its National Labor Relations Act Preemption Claim**

The Ordinance requires a living wage to be paid to hundreds of affected hotel workers, unionized and non-unionized alike, working in or around the Los Angeles Airport.  *See* L.A.M.C. § 104.101 *et seq*.  This legislation, as a substantive regulation of employment conditions is not preempted by the National Labor Relations Act ("NLRA").

Indeed, the scope of NLRA preemption is limited and Courts should apply it narrowly.  "[Courts] should not interpret the doctrine of [NLRA] preemption so broadly as to undermine the broader precepts of federal labor policy of which enforcement of [collective bargaining agreements] is a part.  After all, the Supreme Court has termed [NLRA] preemption but an 'acorn,' not a 'mighty oak.'"  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1070 (9th Cir. 2004).

**1.   Although The NLRA Has No Express Preemption Clause, The Supreme Court Has Nevertheless Articulated Two NLRA Preemption Principles, And LAX Hilton Cannot Show That The Ordinance Meet Either Of These Two Tests**

There is **no** NLRA preemption unless LAX Hilton establishes that the Ordinance meets one of two tests, which it fails to do.  *See Associated Builders & Contractors. of S. Cal. v. Nunn*, 356 F.3d 979, 980-81 (9th Cir. 1988).  First, *Garmon* preemption prohibits states from regulating fields that Congress intended to occupy fully through the creation of a continuum between conduct

that is either protected or prohibited by the NLRA.  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959).  *Garmon* preemption serves "to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA."  *Associated Builders*, 356 F.3d at 978 (citations omitted).

Second, *Machinists* preemption prohibits states from imposing restrictions on "weapon[s] of self-help" unregulated in the NLRA to allow for labor's and management's bargaining decisions "to be controlled by the free play of economic forces." *Lodge 76, Int'l Ass'n. of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140, 146 (1976).  *See also Associated Builders*, 356 F.3d at 978 (citations omitted).

### i.  *Garmon* Preemption Does Not Apply

*Garmon* preemption does not apply to the Ordinance because provision of a living wage, a minimum wage standard, is not a field that Congress intended to solely occupy.  The NLRA does not preempt non-federal regulations that establish minimum wages, benefits, or other "[m]inimum …labor standards [that] affect union and non-union employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA."  *Metro. Life Ins. Co. v. Mass. Travs. Ins. Co.*, 471 U.S. 724, 755 (1985), *overruled in part on other grounds in Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341 (2003).  The Supreme Court specifically considered the legislative history of the NLRA to conclude that the NLRA was intended to supplement, and **not to preclude** local minimum labor standards.  "There is no suggestion in the legislative history of the Act that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but

were unrelated in any way to the processes of bargaining or self-organization."
Indeed, the Supreme Court recognized that "the framework for self-
organization and collective bargaining of the NLRA within the larger body of
state law promoting public health and safety.  **The States traditionally have
had great latitude under their police powers to legislate as 'to the protection
of the lives, limbs, health, comfort, and quiet of all persons**.'" *Metro. Life.*, 471
U.S. at 756-57 (citations omitted); *see also Ft. Halifax Packing Co. v. Coyne*, 482 U.S.
1, 21 (1987) (upholding state law requiring specified severance pay but allowing
for union opt-out via collective bargaining).  Federal labor relations law is,
therefore, interstitial—intended to **supplement local minimum labor
standards.**  *Id*. at 757.

California has expressly contemplated further wage regulation by
municipalities, including the City.  *See* Cal. Const. art. XI, § 7 (granting
municipalities broad legislative power); Cal. Lab. Code § 1205(b) ("Nothing in
this part shall be deemed to restrict the exercise of local police powers in a more
stringent manner.")  Courts have upheld municipalities' exercise of its broad
police powers over a number of wage-related and substantive employment
issues.  *See Washington Serv. Contractors Ass'n. v. Dist. Of Columbia*, 54 F.3d 811
(Fed. Cir. 1995), *cert. den.*, 516 U.S. 1145 (1996) (rejecting NLRA preemption
challenge to local worker retention ordinance requiring new contractors retain
majority of predecessor's workforce); *Alcantara v. Allied Props.*, 334 F. Supp. 2d
336 (E.D.N.Y. 2004) (same); *St. Thomas – St. John Hotel Inc. v. Gov. of Virgin
Islands*, 218 F.3d 232, 244 (3rd Cir. 2000) (finding no preemption of local law
requiring employers have just cause for discharge, even with union opt-out);
*Woodfin Suite Hotels, LLC v. City of Emeryville*, 2006 U.S. Dist. LEXIS 64827 (N.D.
Cal. 2006) (finding no probability of success on the merits that there was

7

preemption of a local ordinance which regulated the wages, hours, benefits and working conditions for hotels with more than 50 rooms).

### ii. *Machinists* **Preemption Does Not Apply**

In its attempt to assert *Machinist* preemption, LAX Hilton misconstrues the Ordinance and its exemption provisions.  *See* L.A.M.C. §§ 104.110-111.  The *Machinist* preemption doctrine does not apply to the Ordinance because the Ordinance applies to unionized and non-unionized employees alike and the City is not a bargaining agent with respect to the set living wages.

The *Machinists* line of cases repudiates the idea that the mere ability to collectively bargain somehow grants unionized employees fewer minimum labor-standards protections.  *Burnside*, 491 F.3d at 1068; *see, e.g., Fort Halifax Packing*, 482 U.S. at 21 (explaining that "pre-emption should not be lightly inferred . . ., since the establishment of labor standards falls within the traditional police power of the State"); *id*. at 21-22 ("[T]he mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for 'there is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues . . . that may be the subject of collective bargaining.'" (quoting *Malone v. White Motor Corp*., 435 U.S. 497, 504-05 (1978)); *Metro. Life Ins.*, 471 U.S. at 755-56 (rejecting the argument that the state's establishment of minimum substantive labor standards undercut the collective bargaining process and thus should be preempted by the NLRA, and adding that "[i]t would turn the policy that animated the [NLRA] on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers").  The

8

Ordinance at issue here presumes its application to all applicable hotel workers —unionized and non-unionized alike—unless a specific waiver has been negotiated in collective bargaining or in unique circumstances regarding the financial solvency of the hotel employer.  Thus, the ills the *Machinist* doctrine is intended to correct, does not apply to the Ordinance so that there is no preemption.

In fact, this Circuit has held that **legislation, with a narrow exemption for collective bargaining agreements via express waiver or opt-out provisions is not NLRA-preempted**.  *See Burnside*, 491 F.3d at 1067, 1070; *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 490 (9th Cir. 1996) (rejecting preemption standard that can be waived by unions but not otherwise); *National Broadcasting Co., Inc. v. Bradshaw*, 70 F.3d 69 , 73 (9th Cir. 1995) (rejecting preemption challenge to regulations that can be waived only by collective bargaining).  The regulation at issue in *Burnside*, like the Ordinance here, states that the regulation would apply to employees unless the collective bargaining agreement expressly provided otherwise.  *Id.* at 1062-63 ("Section (5)(D) of [Cal. Code Regs. tit. 8, §11160 ] stresses that section (5)(A) [of the same regulation] automatically applies to employees already covered by a [collective bargaining agreement]", 'unless [the collective bargaining agreement] expressly provides otherwise.'")  *Burnside* explains that "the operative presumption is that the right [at issue] instantly attaches to all employees covered …, disappearing only if a governing [collective bargaining agreement] 'includes clear language to the contrary.'"  Just like the regulation at issue in *Burnside*, the Ordinance, without a specific and express waiver in the collective bargaining agreement, also **applies uniformly to hotel workers regardless of their union or non-union status**.

Because the Ordinance allows a limited discretionary exemption for otherwise covered entities in specific circumstances (i.e. suffering from specified financial hardship), LAX Hilton contends that this limited exemption somehow also renders the Ordinance subject to NLRA preemption.  LAX Hilton fails to cite to any authority for this proposition.[4]  Regardless, this provision does not trigger preemption because it does not disturb the Ordinance's set minimum or living wages.  Instead, it allows the City to further define who is a covered "hotel employer" under the Ordinance, but has no impact whatsoever on either the setting of the living wage, or defining who is a covered "hotel worker."  Unionized and non-unionized hotel workers would still receive a living wage.

**2.   Courts Have Held Legislation Not Preempted By The NLRA When The Legislation Is Established Pursuant To Public Entities' Regulatory Authority**

LAX Hilton implies that if the City's Ordinance was enacted pursuant to its regulatory power rather than its proprietary authority, this somehow renders the Ordinance NLRA-preempted.  LAX Hilton is wrong.  In *Dillingham Constr. N.A. v. County of Sonoma*, 190 F.3d 1034 (9th Cir. 1999), the court rejected the contention that the prevailing wage legislation was preempted by the NLRA because the legislation in *Dillingham* was established pursuant to the public entity's regulatory power.  *See id*. at 1038; *see also Associated Builders*, 356 F. 3d at 990-991 (reiterating that, whether legislation is enacted pursuant to a public entity's regulatory authority, does not mean the

_____

[4] Moreover, the Ordinance itself allows for severance of its terms to the extent this clause is found invalid, which on its face is intended to assist struggling covered hotel employers.  *See* L.A.M.C. § 104.115.

10

legislation is NLRA preempted, and citing *Dillingham* as an example of same.) The distinction between whether the City enacted the Ordinance pursuant to its proprietary versus its regulatory power only bears upon whether the City asserts the *Building and Construction Trades Council v. Associated Builders and Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993) "market-participant" exemption from NLRA-preemption.  Thus, LAX Hilton's discussion of whether the City is a market-participant is a red-herring.  The fact remains that the Ordinance is not NLRA-preempted because it does not fit within either the *Garmon* or *Machinist* doctrines of preemption.  The motives of the City in enacting the Ordinance or the authority by which it enacted the Ordinance have no role in this Court's finding no preemption. *See Int'l Paper Co. v. Town of Jay*, 928 F.2d 485 (1st Cir. 1996)(rejecting NLRA preemption challenge of an environmental ordinance impacting an employer that was enacted during a strike by a town council that was made up of strikers, where employer argued the council's true motive was to punish employer for its labor relations: "we will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive") (quoting *U.S. O'Brien*, 391 U.S. 367, 383 (1968); *see also Legal Aid Soc'y v. City of New York*, 114 F. Supp. 3d 204, 237 (S.D.N.Y. 2000) (explaining that "the subjective motivation of a state actor is irrelevant to preemption analysis, which instead is guided by the objective efforts of state action in relation to the federal scheme"); *No. Ill. Chap. Associated Builders & Contractors v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005) ("Federal preemption doctrine evaluates what legislation *does*, not why legislators voted for it or what political coalition led to its enactment."); *Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res.*, 390 F.3d 206, 216 n.7 (3rd Cir. 2004) ("We do not believe, however, that *Boston Harbor* and its progeny require a factual

11

investigation into the particular subjective motives of the relevant government agency."); *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1335-36 (Fed. Cir. 1996) (refusing to question the President's motives for executive order affecting labor in deciding NLRA preemption question); *New England Health Care Employees Union v. Rowland*, 221 F. Supp. 2d 297, 327 n. 39 (D. Conn. 2002) (evidence of subjective legislative motive irrelevant to NLRA preemption).

**3.  The Authority Upon Which LAX Hilton Relies To Ostensibly Support Its Preemption Argument Is Not Only Distinguishable, But Also Has Been Criticized And Narrowed Within This Circuit**

LAX Hilton claims that the Ordinance is preempted because it targets only certain hotels and speculates about the "timing" and "motivation" of enactment of the Ordinance. *See* discussion *supra* at page 11, line 4 through page 12, line 2. LAX Hilton relies on *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995), as support for its argument that it is unlawful for minimum wage requirements to target specific entities, especially when they are "so restrictive as to virtually dictate the results" of collective bargaining. *Id*. at 501. LAX Hilton's reliance on *Bragdon* is misplaced. In the cases following *Bragdon*, the Ninth Circuit has explained that:

> *Bragdon* must be interpreted in the context of Supreme Court authority and our other, more recent, rulings on NLRA preemption. While *Bragdon* emphasized that the Contra Costa County ordinance 'targets particular workers in a particular industry,' *id*. at 504, we have since explained on several occasions that the NLRA does not authorize us to preempt minimum labor standards simply because they are applicable only to particular workers in a particular industry. (citations omitted) It is now clear in this Circuit that state substantive labor standards, including minimum wages, are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market. *Associated Builders*, 356 F.3d at 990.

12

Furthermore, the Ordinance imposes a minimum wage regulation, rather than a prevailing wage requirement, and the Ninth Circuit in *Bragdon* expressly distinguished minimum wage regulations as lawful. *Id*. at n.8 (citing *Bragdon*, 64 F.3d at 502).

LAX Hilton argues that *Bechtel Construction Inc. v. United Brotherhood of Carpenters & Joiners of America*, 812 F.2d 1220, 1225-26 (9th Cir. 1987), also governs this case. *Bechtel* is distinguishable. In *Bechtel*, the Ninth Circuit held that the NLRA preempted a California law setting minimum wages for apprentices. Under California law, wages lower than minimum wage could be negotiated with the approval of a state agency. *Id*. at 1226. This state interference in the collective bargaining process was held to be impermissible. There is no City interference in collective bargaining here. The City does not have any role whatsoever in collective bargaining negotiation or agreement approval. The City is not a bargaining agent at all. Unlike the State in *Bechtel*, the City does not set variable minimum rates depending on negotiation with the parties.

**B.     LAX Hilton Is Not Likely To Succeed On The Merits Of Its Equal Protection Claim**

The Ordinance is subject to rational basis review because it creates classifications that neither impose upon a fundamental right nor target a suspect class. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). This standard "is the paradigm of judicial restraint," *Id*., under which any classification drawn by the challenged statute is presumed valid. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985). The party attacking a legislative classification reviewed under the rational basis standard must demonstrate that there is no reasonable basis for the challenged distinction by

13

negating "every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citations omitted). "[I]f there is any reasonably conceivable state of facts that could provide a rational basis for the classification"—any "plausible reason" at all--the court's "inquiry is at an end." *Beach Communications*, 508 U.S. at 313-314.

LAX Hilton claims it has been unfairly targeted by the Ordinance, which applies only to those hotels located within the Zone with 50 or more guestrooms. LAX Hilton argues this distinction, as well as the Ordinance's exemption provision for collective bargaining agreements, and the hardship waiver provision, violates equal protection. In support of its argument, LAX Hilton highlights that the City did not cite to any studies to support the stated purpose of the Ordinance, which LAX Hilton narrowly defines as the promotion of the economic vitality of the Zone. LAX Hilton further maintains that the true motive of the City in passing the Ordinance was improper and in violation of equal protection.[5]

The City's reasons for enacting the Ordinance are articulated in the section entitled "Purpose." Recognizing that hotels within the Zone "derive significant and unique business benefits" that are "unique as compared to any other industry in any other region of the City" due to their close proximity to City-owned LAX, the City aims to enhance those benefits by "target[ing] new City resources, investment and benefits," within the Zone. The City's

---

[5] Plaintiff claims an equal protection violation under both the California Constitution and the Fourteenth Amendment, however the analysis is the same. California law is "substantially similar" to federal law in the area of equal protection, with the rational basis standard of review applying equally to both. *See Manduley v. Superior Court*, 27 Cal.4th 537, 571-572 (2002).

14

commitment of resources "to improve and encourage the continuing growth and development of the business community in the [Zone]," is coupled with the City's interest in "improving the welfare of service workers at LAX-area hotels by ensuring that they receive decent compensation for the work they perform." Based on such findings and government interests, "the City finds that it is appropriate to impose a regulatory requirement to pay a living wage on certain hotels in the [Zone]…."  L.A.M.C. section 104.101.

1.  **The Distinctions and Exemptions Drawn Under the Ordinance Are Rationally Related to a Legitimate Legislative Interest**

LAX Hilton's objection that the Ordinance unfairly targets one type and size of business for regulation has no support under well-established equal protection analysis.  The Equal Protection Clause does not require that all businesses be treated alike.  *See, e.g.*, *City of New Orleans v. Dukes*, 427 U.S. 297 (1976) (grandfather provision exempting certain vendors from prohibition of sidewalk pushcarts upheld, even though exemption does not serve statutory purpose of eliminating blight); *Viceroy Gold*, 75 F.3d at 491 (state labor code setting 8-hour maximum work day for employees of non-union mines, while allowing up to 12-hour workday for employees of union mines, is rationally related to states interest in safety of mine workers). Courts give great deference to the legislature in drawing distinctions pursuant to social and economic policy considerations.

In *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2003), the court rejected an Equal Protection challenge to a City of Berkeley ordinance requiring that living wages be paid by hotels and restaurants in Berkeley's Marina Zone, leaving hotels and restaurants in other parts of the city exempt

from such regulation.  One marina hotel challenged the ordinance under the

Equal Protection Clause arguing that the ordinance's geographic distinction

was "unfair." *Id*. at 1155.  The court explained why the challenge had no merit:

> Such legislative decisions are "virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally."  *Beach Communications*, 508 U.S. at 316. "'Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Id*. (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)) (finding a rational basis where the state made geographic distinctions to determine tax rates for slot machines).

*Id*.; *see also Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (classification does not

violate equal protection simply because it "is not made with mathematical

nicety or because in practice it results in some inequality"); *Metropolis Theatre

Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913) ("The problems of government are

practical ones and may justify, if they do not require, rough accommodations –

illogical, it may be, and unscientific.").

In enacting the Ordinance, the City made a legislative decision to set a living

wage standard for those hotels that derive a distinct economic benefit from their

proximity to publicly owned LAX—one of the world's busiest airports.  The

City determined that hotels within the Zone—and specifically larger hotels—

should be required to pay their workers a living wage.  With their high real

estate values, income and occupancy rates these hotels are better able to absorb

the higher minimum wages mandated by the Ordinance than small hotels or

hotels in other regions of the City.  Moreover, because hotels within the Zone

benefit substantially from the economic investments the City has made and will

continue to make in and around LAX, it is reasonable for the City to require that

16

a modest amount of that benefit should be used by the hotels to pay their employees a living wage, provide them health care benefits and compensated days off.

"[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 U.S. at 315; *see also Heller, supra*, 509 U.S. at 320 ("A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification."); *Cent. State Univ. v. American Ass'n of Univ. Professors*, 526 U.S. 124, 128 (1999) (rationality of statutory classification may be based on factual assumptions that have *no support* in the factual record). Therefore, it is inconsequential under equal protection analysis whether there is any evidence in the record to support the assumption that the economic conditions benefiting large LAX area hotels make them a fitting class for the City to target in furthering the socio-economic policy underlying the Ordinance. In fact, the classifications at issue in *RUI* were upheld based on the same reasonable assumptions.

The exemption provided under the Ordinance for collective bargaining agreements also satisfies Equal Protection.  Similar provisions allowing unions to opt-out of statutory labor protections through collective bargaining were upheld in both *RUI* and *Viceroy Gold*.  Paraphrasing the Court's reasoning in *Viceroy Gold*, "the [City] could rationally have believed that workers covered by collective bargaining agreements . . . have greater power to ensure [favorable terms of employment] than workers with individual employment agreements."  *Viceroy Gold*, 75 F.3d at 491.  Through the collective bargaining process, hotel workers covered under the Ordinance may bargain for a labor agreement that provides a lower hourly wage than mandated under

the Ordinance in exchange for retirement benefits.  To further the policy of enhancing the conditions of employment of service workers in the Zone, the City rationally set forth an exemption for collective bargaining agreements.[6]

### 2. Plaintiff's Skepticism Concerning The "True" Motive Behind The Ordinance Is Irrelevant

Plaintiff asserts in its complaint that the City's "true" motivation in enacting the Ordinance "is both readily apparent and unlawful."  (APPLICATION, page 3, line 1.)  Alleging that the timing of the City's enactment of the Ordinance coincided "with growing pressure from the local union, Unite Here, to unionize hotels located near LAX," Plaintiff claims that the Ordinance is an illegitimate effort by the City to weigh in on the side of labor in that struggle.  (APPLICATION,  page 1, line 26 through page 2, line 1.)

The Supreme Court has emphasized "many times . . . that rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'  Nor does it authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'"  *Heller v. Doe*, 509 U.S. at 319 (citations omitted); *see also U.S. Railroad Ret. Bd. V. Fritz* 449 U.S. 166, 179 (1980) (it is "constitutionally irrelevant" whether the rational purpose of the legislation "in fact underlay the legislative decision"); *Beach Communications*, *supra*, 508 U.S. at

---

[6]    Similarly, where compliance with the Ordinance would require a hotel to cut back on employees or reduce shifts, the purpose of the Ordinance would be undermined.  Thus, the hardship exemption set forth at section 104.11 of the Ordinance satisfies rational basis review.

315 (". . . it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.")  Moreover, "rational basis review is a very lenient one, and specifically 'attach[es] no legal significance to the timing' of legislative or municipal action." *RUI*, 371 F.3d at 1156 (citation omitted).

**C.    LAX Hilton's Claim Is Barred By Claim-Splitting And Res Judicata As Well As Laches**

> **1.   LAX Hilton's Current Challenge To The Ordinance Is Its Second Attempt To Invalidate The Ordinance, And As Such, It Is Barred Under The Doctrines Of Claim-Splitting And Res Judicata**

The main purpose behind the rule preventing claim splitting is "to protect the defendant from being harassed by repetitive actions based on the same claim." *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995).  To determine if the doctrine of claim splitting applies to bar a subsequent case, the Ninth Circuit "borrow[s] from the test for claim preclusion." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007).  *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 970 (9th Cir. 1994), sets forth the factors to consider in determining whether successive suits involve the same cause of action: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." Although not one single factor is determinative of whether a successive suit

would be barred, factor (4) is the most important factor in the analysis. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).

This is LAX Hilton's second "bite" at challenging the Ordinance, its first effort having failed. Because both the previous challenge and the current challenge relate to the "same transaction or nucleus of events," this successive effort should be disallowed.

The *Rubalcava* court recognized that LAX Hilton and the other parties to the election challenge "objected to the economic burden imposed by the Wage Ordinance because it mandated higher minimum wage requirements on hotels near the Los Angeles International Airport, whereas the Chamber of Commerce objected to the prospect that similar requirements would be imposed elsewhere." *Rubalcava*, 158 Cal. App. 4th at 577. These are the same fears and concerns that permeate LAX Hilton's current action. (*See generally* APPLICATION.) Because LAX Hilton's successive challenges arise out of the same transactional nucleus of facts—stemming from the same Ordinance and their concerns arising from same—LAX Hilton's current action is barred because it constitutes impermissible claim-splitting. *Cf Strickland v. City of Albuquerque*, 130 F.3d 1408 (10th Cir. 1997) (holding the second-action constituted impermissible claim-splitting where the plaintiff had raised a procedural challenge to his termination in the first proceeding, and then brought a second proceeding on substantive (42 U.S.C.S. § 1983) grounds and explaining "[e]ven where a single act causes a number of different harms or gives rise to liability under a number of different legal theories, there is ordinarily only one transaction").

Moreover, LAX Hilton actually raised its equal protection argument in the prior action, where it characterized the issue before the court as an "object[ion] to the ordinance which established a **discriminatory** minimum wage on a small number of hotels operating within the City." (Pet. for Review to Cal. Sup. Ct. in *Rubalcava*, 2008 CA S. Ct. Briefs LEXIS 255, *11) (emphasis added); *see also* Reply re Pet. for Review to Cal. Sup. Ct. in *Rubalcava*, 2008 CA S. Ct. Briefs LEXIS 257, *7-8.)  The *Rubalcava* court considered LAX Hilton's "discrimination" claim, and found it had no merit.[7] *Rubalcava*, 158 Cal. App. 4th at 579.  Having already litigated its equal protection challenge to the Ordinance, LAX Hilton is barred by the doctrine of res judicata from raising it again here.

## 2. **To The Extent The Action Is Even Permissible, LAX Hilton Inexcusably Delayed Bringing Its Claim**

Laches bars LAX Hilton's current claim.  Laches is an equitable defense that prevents a plaintiff, who "'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'"  *S. Pac. Co. v. Bogert*, 250 U.S. 483, 500 (1919) (McReynolds, J., dissenting) (citing *Hayward v. Nat'l Bank*, 96 U.S. 611, 24 L. Ed. 855 (1877)).  Laches may properly bar a suit, even if brought within the statute of limitations. *See Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1038-39 (9th Cir. 2000).  LAX Hilton brings the instant action contending that it needs emergency intervention from this Court to prevent implementation of the Ordinance.  However, because LAX Hilton brought the previous challenge to the Ordinance that failed, it was aware over three-months ago (upon the

---

[7]     LAX Hilton is not and never has been a member of a protected class under the Fourteenth Amendment.  Thus, its "discrimination" claim in the first action can only be understood as the same equal protection claim it alleges again here, albeit less artfully.

21

California Supreme Court's denial of review) that the Ordinance would take effect.  Further, LAX Hilton was aware of the subject-matter of the Ordinance at the time of its previous challenge—over one-year ago.  Yet LAX Hilton waited until the eve of the Ordinance's effective date to bring its claim (and, in fact, filed its APPLICATION two-days after the Ordinance took effect).   LAX Hilton now attempts to exploit its own delay to claim it needs immediate relief.  LAX Hilton does not present any excuse for its delay, which not only prejudices the City, but also may impact all the hotel workers the Ordinance intends to benefit.

**D.   LAX Hilton Cannot Show Serious Irreparable Injury And The TRO APPLICATION Should Be Denied As A Result**

LAX Hilton bases its claim of irreparable injury on its speculative loss of money.[8]  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended … are not enough" and LAX Hilton's TRO APPLICATION should be denied as a result.  *See Sampson v. Murray,* 415 U.S. 61, 88 (1974).

LAX Hilton benefits from the City's commitments under the ordinance so that any alleged financial losses it claims are mitigated by the advantages it receives from the City.  Notwithstanding LAX Hilton's grumblings about the Ordinance's minimum wage requirements, LAX Hilton directly and indirectly benefits from the Ordinance.  Under the Ordinance, the

---

[8]   One of LAX Hilton's specific monetary complaints is that it cannot include tips and gratuities paid to its hotel workers to satisfy the Ordinance's living wage requirements.  (*See* APPLICATION, page 3, lines 10-14 and page 7, lines 7-11.)  However, even under California law, an employer may not use tip credits to satisfy its minimum wage obligations.  *See* Cal. Lab. Code § 351.

City has a number of obligations regarding improvements that advantage the hotels.  The Ordinance committed the City to make a number of improvements within the Zone.  *See* L.A.M.C. § 104.103.  The City declared that it would perform $1,000,000 in street improvements, conduct a $50,000 study into ways of attracting new businesses, and create a program that would train 120 workers per year for positions in hotels and restaurants so that the covered hotel employers would have better trained workers under the Ordinance; in addition, it promised to investigate a reduction in business taxes, the creation of a new recycling and waste diversion program, and the construction of a convention center and remote hotel check-in facilities.  *Id.*  This Court should consider these direct and indirect benefits that the City intended would help facilitate compliance and improve the economic outlook of the Zone.  These benefits mitigate, if not render obsolete, LAX Hilton's monetary complaints.

**E.     LAX Hilton's Alleged Concern With Retroactivity Is Unripe**

There is no present controversy as to any possible retroactive application of the Ordinance.  A claim is not ripe for adjudication if it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)).  LAX Hilton's claim that someone might at some point in the future claim that the Ordinance should be construed to have retroactive application is simply too attenuated to raise a present controversy.  LAX Hilton offers no evidence to suggest that anyone, whether it be the City or some third party claiming interests under the Ordinance, seeks to have the living wage

provisions of the Ordinance applied retroactively.  Therefore, LAX Hilton's claim concerning retroactivity is not ripe.

F.     **The Balance Of Hardships Weigh In Favor Of Enforcement Of The Ordinance**

        The City enacted the Ordinance in large part because of its role as a provider of social support services.  *See* L.A.M.C. § 104.101.  In fact, the City explains the purpose for the Ordinance as stemming from the City's "interest in promoting an employment environment that protects government resources and engages in responsible employment practices.  In requiring the payment of a higher minimum level of compensation, [the Ordinance] benefits that interest."  Given the current economic conditions—with average gas prices in Los Angeles exceeding $4.57 cents per gallon and high food prices boosting inflation—provision of a living wage is even more timely and necessary.[9] *See* Ronald D. White, *Energy; Pessimism Rises As Oil, Gas Prices Set Record*, L.A. TIMES, July 1, 2008 at C1; *Wasted Energy; Ethanol Is Bad Economic Policy And Bad Energy Policy—But It Should Teach Congress A Good Lesson*, L.A. TIMES, July 3, 2008 at A24.  LAX Hilton's complaints of purported hardship must be weighed against the hardship that the low income hotel workers will suffer without receipt of a living wage.[10]  Especially in light of today's volatile and uncertain

-------------------------------------------------------

[9] Indeed, this begs the question whether, even with annual living wage adjustments, the $9.39 per hour with health benefits, or $10.64 per hour without health benefits mandated by the Ordinance is even a "living wage."

[10] The interests of the other hotels in the Zone should also be considered in this Court's balancing analysis because, if the APPLICATION is granted, these hotels will be precluded from enjoying the benefits of the City's commitments under the Ordinance.  *See* discussion *supra* at III(D).

economic conditions, the balance must decidedly tip in favor of the hotel workers eking out a living.  "Faced with . . . a conflict between financial concerns and preventable human suffering, [Courts] have little difficulty concluding that the balance of hardships tips decidedly" in favor of the latter. *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983); *see also Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008) (quoting same with respect to granting a stay to a preliminary injunction to a city ordinance because the court concluded "the general public has an interest in the health of San Francisco residents and workers").

## IV.   CONCLUSION

Based on the foregoing, the City respectfully requests that this Court deny LAX Hilton's TRO APPLICATION.

DATED:  July 8, 2008          ROCKARD J. DELGADILLO, City Attorney
                              LAURIE RITTENBERG, Assistant City Attorney
                              JOHN A. CARVALHO, Deputy City Attorney
                              ADENA M. HADAR, Deputy City Attorney


                              By: _____
                                    JOHN A. CARVALHO
                                    Deputy City Attorney
                                    Attorneys for Defendants
                                    City of Los Angeles, Karen Kalfayan
                                    Rockard J. Delgadillo, and the Los Angeles
                                    City Council

25