UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FORTUNA ENTERPRISES, L.P. d/b/a THE LOS ANGELES AIRPORT HILTON HOTEL AND TOWERS, a Delaware limited partnership, | ) ) ) ) ) | CV 08-4373 SVW (MANx) STATEMENT OF REASONING OUTLINING PRIOR DENIAL OF APPLICATION FOR TEMPORARY |
| Plaintiff, | ) ) | RESTRAINING ORDER |
| v. | ) ) | |
| THE CITY OF LOS ANGELES et al., | ) ) | |
| Defendants. | | |

///

///

## I.   INTRODUCTION

Petitioner Fortuna Enterprises, L.P. d/b/a/ The Los Angeles Airport Hilton Hotel and Towers ("Petitioner" or "Hilton") alleges that the Airport Hospitality Enhancement Zone Ordinance (the "Ordinance") passed by the City of Los Angeles ("Defendant" or the "City") cannot be constitutionally applied to its hotel.  Petitioner applies for a Temporary Restraining Order granting it relief from the Ordinance. The Court previously denied Petitioner's Application on July 14, 2008. The Court now offers the reasons for its denial in this order.

## II.  FACTUAL BACKGROUND

Ordinance No. 178432, entitled the Airport Hospitality Enhancement Zone Ordinance, was adopted on February 21, 2007 by the Los Angeles City Council (the "Council") (Mot., at 1, 4; Opp., at 3.) This ordinance designates the "Century Boulevard Corridor" situated by the Los Angeles International Airport as an "Airport Hospitality Enhancement Zone" (the "Zone"). LAMC Section 104.101. The stated intent of the Ordinance the Council is to "promote the economic vitality of the Corridor" by targeting city resources in the Zone such as: workforce training programs for hotel workers; a study to construct a conference center; and funds for street improvements. Id. (Mot. at 4-5; Opp. at 3). The Ordinance also sets a minimum wage requirement for all hotels containing 50 or more guest rooms  within the Zone. However, the ordinance allows a hotel to avoid these

requirements if it can demonstrate that the Ordinance's requirements are burdensome or if its workers have agreed to a waiver through a collective bargaining agreement. LAMC Sections 104.110-111.

The Ordinance was scheduled to take effect on July 5, 2008. On July 3, 2008 Plaintiffs requested a writ of mandate in Los Angeles Superior Court. Defendant removed the case to this Court on July 2, 2008. Plaintiff filed the present Application for a Temporary Restraining Order on July 7, 2007. The Court denied Plaintiff's Application on July 14, 2008.

**III.  ANALYSIS**

**A.   Legal Standard for a Temporary Restraining Order ("TRO")**

Under Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney.  Fed. R. Civ. P. 65(b).[1]  However, where, as here, the adverse party or that party's attorney has received notice, the application may be treated as one for a preliminary injunction.  See, e.g., Cumulus Media Inc. v.

---

[1] Rule 65(b) provides:
> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b).

<u>Donovan</u>, 2004 WL 2958416, at *1 (D. Or. Dec. 20, 2004); <u>Border Power</u>
<u>Plant Working Group v. Dep't of Energy</u>, 2003 WL 22331251, at *2 (S.D.
Cal. June 4, 2003); 11A Charles Alan Wright et al., <u>Federal Practice</u>
<u>& Procedure</u> § 2951, at 254 (2d ed. 1995) ("When the opposing party
actually receives notice of the application for a restraining order,
the procedure that is followed does not differ functionally from that
on an application for a preliminary injunction and the proceeding is
not subject to any special requirements." (footnote omitted)).

    In any event, courts in the Ninth Circuit apply the same
standard to motions for a temporary restraining order that they do to
motions for a preliminary injunction. <u>See, e.g.</u>, <u>DHL Worldwide</u>
<u>Network v. Tradebeam, Inc.</u>, 2005 WL 196529, at *1 (N.D. Cal. Jan. 28,
2005) ("[I]n this circuit the standard for a temporary restraining
order is the same as for a preliminary injunction."); <u>League of</u>
<u>Wilderness Defenders v. United States Forest Serv.</u>, 2004 WL 1068787,
at *2 (D. Or. May 12, 2004) (applying the preliminary injunction test
in determining whether to issue a temporary restraining order);
<u>Ranchers Cattlemen Action Legal Fund v. Dep't of Agric.</u>, 2004 WL
1047837, at *5 (April 26, 2004) ("The standard for issuing a
temporary restraining order is substantially identical to the
standard for issuing a preliminary injunction."); <u>Border Power Plant</u>
<u>Working Group</u>, 2003 WL 22331251, at *2 ("[T]he Court finds persuasive
those cases employing the same standard to resolve a motion for a
temporary restraining order as a preliminary injunction."); <u>Brown</u>
<u>Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.</u>, 236 F. Supp. 2d
1152, 1154 (D. Haw. 2002) ("The standard for issuing a temporary

4

restraining order is identical to the standard for issuing a preliminary injunction.").

**B.   Legal Standard for a Preliminary Injunction**

In deciding whether to issue a preliminary injunction, a court must balance the plaintiff's likelihood of success against the relative hardship to the parties.  <u>Walczak v. EPL Prolong, Inc.</u>, 198 F.3d 725, 731 (9th Cir. 1999).  A court may appropriately issue a preliminary injunction where the "plaintiffs demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [their] favor."  <u>S.W. Voter Registration Educ. Project v. Shelley</u>, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (internal quotation marks omitted).  "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests."  <u>Clear Channel Outdoor Inc. v. City of Los Angeles</u>, 340 F.3d 810, 813 (9th Cir. 2003) (quoting <u>Walczak</u>, 198 F.3d at 731).  "Thus, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be established by the party."  <u>Beardslee v. Woodford</u>, 395 F.3d 1064, 1067 (9th Cir. 2005).

The district court must also consider whether the public interest favors issuance of the injunction.  <u>Id.</u>  "This alternative test for injunctive relief has been formulated as follows: a plaintiff is required to establish '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to

plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).'" <u>Shelley</u>, 344 F.3d at 917-18 (quoting <u>Johnson v. Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir. 1995)).

## C.   Likelihood of Success

Under these various tests, it is always necessary that Plaintiff's claim have some small likelihood of success. However, it is clear that Plaintiff's constitutional claims are highly susceptible to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and so have little to no chance of success.

### 1.   Equal Protection Claim

Hilton argues that the City's Ordinance violates its rights under the Equal Protection Clause, United States Const. amend. XIV, § 1, and Article I, Section 7 of the California Constitution by: (1) allowing unionized hotels within the Zone to be exempt from the Ordinance through collective bargaining; (2) singling out a class of hotel owners for disparate treatment from other business owners; (3) by excluding hotels with less than 50 rooms; (4) excluding other hotels located within Los Angeles and; (5) allowing a waiver of the conditions of the Ordinance if the hotel employer would demonstrate a reduction in workforce or total hours worked by employees. (Mot., at 14).

The Fourteenth Amendment of the federal Constitution and Article 1, Section 7 of the California constitution each "prohibit denial to persons of the equal protection of the laws." Britt v. City of Pomona, 223 Cal.App.3d 265, 274 (1990). By and large, equal protection analysis under the federal and California constitutions are "'substantially similar.'" RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1154 (9th Cir. 2004) (quoting L.A. County v. S. Cal. Tel. Co., 32 Cal.2d 378, 196 P.2d 773, 781 (1948)); see also, e.g., People v. Hofsheier, 37 Cal.4th 1185, 1200-02 (2006) (construing federal California equal protection guarantees together); Britt, 223 Cal. App.3d at 274 (same); Cooper v. Bray, 21 Cal. 3d 841, 847-48 (1978) (same); Brown v. Merlo, 8 Cal. 3d 855, 860 (1973) (same). As the Plaintiff does not allege that application of the Ordinance impinges on a fundamental right or targets a suspect class, it is subject only to rational basis review. RUI One Corp., 371 F.3d at 1154. As defined by the Supreme Court, particularly with regard to economic regulations such as the Ordinance, rational basis review requires the Court to "determine whether there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id. (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)); see also SeaRiver Maritime Financial Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). In making this determination, the Court need not determine the actual motive of the Council in passing the Ordinance or engage in fact-finding with regard to the rationality of conceivable motives. RUI One Corp., 371 F.3d at 1155. However, California Supreme Court has noted that, in its view,  all formulations of the rational basis test 'require the

court to conduct [a] serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals." Cooper, 21 Cal. 3d 848 (quoting Newland v. Board of Governors, 19 Cal. 3d 705, 711 (1977) (internal citations omitted)). The California Supreme Court has further noted that any rationale for the legislation at issue "must be 'plausible . . . and the factual basis for that rationale must be *reasonably conceivable.*" Hofsheier, 37 Cal.4th at 1201.  Whatever exact formulation of rational basis review is applied, the Court finds it highly implausible that the Plaintiff will be able state a viable equal protection claim.

Plaintiff essentially alleges that the Ordinance violates the equal protection guarantees because it favors employees at larger hotels in the Zone over smaller hotels, other businesses, and hotels outside the zone. However, as the Supreme Court has noted, the scope of coverage of a particular regulatory requirement is "virtually unreviewable" and a "legislature must be allowed to approach a perceived problem incrementally." FCC, 508 U.S. at 316. "'[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.' " FCC, 508 U.S. 316 (quoting Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489 (1955)). Relying on these statements, the Ninth Circuit has rejected a federal and California equal protection challenge to an analogous living wage city ordinance targeting only employers of a certain size within a certain zone of the City of Berkeley.  RUI One Corp. v. City of Berkeley,  371 F.3d 1137, 1154 (9th Cir. 2004). The Ordinance states

in its purpose section that the hotels in the Zone "derive
significant and unique business benefits from their close proximity
to LAX . . . [and] from the City's designation of the Corridor as an
Airport Hospitality Enhancement Zone. Accordingly, the City finds it
appropriate to impose a regulatory requirement to pay a living wage
on certain hotels in the Corridor. . . ." LAMC Section 104.101.
Plaintiff has not provided any reason to believe that the City's goal
of ensuring that  benefits the hotels in the Zone derive from their
location be passed on to their employees can be shown to be an
illegitimate one. It is entirely plausible that hotels derive
benefits from their location in the Zone in the form of greater
patronage that other businesses in the Zone and hotels outside the
Zone do not receive to the same extent and entirely legitimate that
the legislature may desire to ensure that some of those special
economic benefits are passed on to hotel employees. Furthermore, the
provisions of the Ordinance enforcing higher wages on certain hotels
appear to bear a rational relationship to this goal. The fact that
the Ordinance exempts smaller hotels and allows waiver of the
Ordinance's requirements could rationally arise from the
legislature's belief that not all hotels in the Zone could
economically sustain the wage requirements of the Ordinance and a
resultant desire to pursue reform incrementally.  Additionally, the
Ordinance's exceptions for workers party to a collective bargaining
agreement could rationally arise from the expectation that unionized
workers are better able to protect their interests with regard to
wages than non-unionized workers. See Viceroy Gold Corp. v. Aubry, 75
F.3d 482, 490-91 (9th Cir. 1996) ("Moreover, the California

9

Legislature could rationally have believed that workers covered by collective bargaining agreements . . . .have greater power to ensure safe working conditions than workers with individual employment agreements.") Hence, on the whole, the Court finds it highly unlikely that Plaintiff will be found to have alleged a lack of rational basis for the Ordinance.

### 2.   Preemption

Plaintiff further alleges that the Ordinance is invalid because it is preempted by the National Labor Relations Act. Under Article VI of the Constitution states may not enact laws that conflict with federal statutes or their purposes. Pursuant to this principle, the Supreme Court has established two separate doctrine of preemption by the federal labor law. The first, referred to as Garmon preemption, "protects the primary jurisdiction of the NLRB to determine in the first instance what kind of conduct is either prohibited or protected by the NLRA." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 749 (1985) (citing San Diego Building Trades Council v. Garmon, 359 U.S. 236, 749 (1959). Garmon preemptions "preempts state laws that attempt to regulate conduct which is either arguably protected or prohibited by the NLRA. The second, referred to as Machinist preemption, "protects against state interference with policies implicated by the structure of the Act itself, by pre-empting state law and state causes of action concerning conduct that Congress intended to be unregulated." Id.; see Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976). Plaintiff alleges both types of

preemption in its Application, though relying on the same case citations for each.

    *i. Garmon Preemption*

  Under <u>Garmon</u> preemption, the NLRA "preempts state laws that attempt to regulate conduct which is either arguably protected or prohibited by the NLRA." <u>Dillingham Const. N.A., Inc. v. County of Sonoma</u>, 190 F.3d 1034, 1041 (9th Cir. 1999). The Court cannot find that the Ordinance is subject to <u>Garmon</u> preemption because Plaintiff does allege that the Ordinance seeks to regulate conduct regulated by the NLRA. Plaintiff does not allege that the NLRA substantively regulates work wages such that the Ordinance would be preempted on that basis. <u>See</u> <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 748 (1985) (finding <u>Garmon</u> preemption not implicated by state law establishing minimum welfare benefit plans because "[t]here is no claim here that Massachusetts has sought to regulate or prohibit any conduct subject to the regulatory jurisdiction of the NLRB, since the Act is silent as to the substantive provisions of welfare-benefit plans") <u>overruled in part on other grounds by</u> <u>Kentucky Ass'n of Health Plans, Inc. v. Miller</u>, 538 U.S. 329 (2003); <u>Fort Halifax Packing Co., Inc. v. Coyne</u>, 482 U.S. 1, 22 fn 16 (1987). Instead, Plaintiff alleges that the Ordinance "improperly encourages the collective bargaining process" by allowing union employees to undercut the minimum wage standards set by the Ordinance through a collective bargaining agreement and through waiver by the state Controller. (App., at 12.) The only authority that Plaintiff claims applies <u>Garmon</u> preemption in such a fashion is <u>Bechtel</u>

<u>Const., Inc. v. United Broth. of Carpenters & Joiners of Am.</u>, 812 F.2d 1220, 1226 (9th Cir. 1987). In that case, the Ninth Circuit found that a state law setting a minimum wage for apprentices impermissibly interfered with the collective bargaining process because the law allowed a bargaining representative, with the approval of a state agency, to negotiate wage levels below that normally mandated by the law. <u>Id.</u> At 1226. The court found that, as a result, the law "mandate[d] state interference in the collective bargaining process." <u>Id.</u>   Plaintiff argues that as the Ordinance may similarly be undercut by collective bargaining, it is similarly preempted. However, unlike the state law at issue in <u>Bechtel</u>, the Ordinance does not require approval by a state agency for any collective bargaining agreement. Lacking such a provision, the Ordinance cannot be said to mandate state interference in the collective bargaining process. <u>See</u> <u>Associated Builders and Contractors of Southern California, Inc. v. Nunn</u>, 356 F.3d 979, 987-88 (9th Cir. 2004) ("The requirement of state approval caused the <u>Bechtel</u> court to conclude that § 212(c) effectively gave apprentices two bargaining representatives--the state and their union--in violation of the NLRA."); <u>Dillingham</u>, 190 F.3d at 1041 (stating that the state law at issue in <u>Bechtel</u> impermissibly affected collective bargaining "because the wage standards were not true legal minimums *and* because the state became a second bargaining agent" (emphasis added)). There is no indication in <u>Bechtel</u> that the mere fact that a minimum wage standard could be undercut by either the typical collective bargaining process or through separate appeal to a state agency impermissibly involves the state in the collective bargaining process such as to create <u>Garmon</u> preemption. Indeed, the Supreme Court

has specifically rejected the notion that a state law establishing a minimum labor standard, such as a minimum wage, with an exception for collective bargaining is subject to any NLRA pre-emption. <u>Fort Halifax Packing</u>, 482 U.S. at 22. The Court instead found that such an exception to a state-mandated minimum labor standard "strengthens the case that the statute works no intrusion on collective bargaining." <u>Id.</u>; <u>see also</u> <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 131 (1994); <u>Viceroy</u>, 75 F.3d at 490-91. Hence, the Court has been provided with no legal basis at this point to conclude that Plaintiff will succeed in its <u>Garmon</u> preemption argument.

   *ii. Machinist Preemption*

   "Under the <u>Machinists</u> preemption doctrine, the NLRA preempts state laws and state causes of action that regulate activity Congress intended to leave unregulated." <u>Dillingham Const.</u>, 190 F.3d at 1038. Plaintiff asserts that the Ordinance is subject to <u>Machinist</u> preemption because it "interferes with the fundamental balance of power between labor and management and is contrary to the well settled doctrine that negotiation of wages is left to the free market." (App., at 9.) Plaintiff fails to offer any support for these general assertions, which appear to be contradicted by clear precedent. As Plaintiff acknowledges, the Supreme Court in <u>Metropolitan Life</u> held that "when a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the act" and is not subject to <u>Machinist</u> preemption. 471 U.S. at 757. As the Supreme Court noted, "[m]inimum state labor

standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." Id. at 755. Plaintiff asserts the Ordinance is not subject to the reasoning of Metropolitan Life because it does not establish a true minimum wage, as the requirements of the Ordinance can be undercut by either the collective bargaining process or waiver by the state controller.   (App., at 10.) As a result, Plaintiff asserts, "the wage rates established in the Ordinance do *not* affect union and nonunion employees equally." (App., at 11.) However, as noted above, the Supreme Court has specifically stated that the holding of Metropolitan Life is just as, if not more applicable, to minimal employment standards   that can be excepted by clear waiver in collective bargaining arrangements.  Fort Halifax, 482 U.S. at 22; see also Livadas, 512 U.S. at 131; Viceroy, 75 F.3d at 489. Similarly, the fact that the Ordinance can be waived independently of the collective bargaining process by the state controller with regard to both unionized or non-unionized employers based on financial need is not in any   way the Court can discern material to Machinist preemption analysis. Nor has Plaintiff provided any argument whatsoever as to why this would be so.

The only authority relied on by Plaintiff provides no further reason to conclude Plaintiff's argument has merit. Plaintiff again relies on the holding in Bechtel and its elucidation by Dillingham to support its view that the Ordinance is subject to Machinist preemption. However, Bechtel does not even discuss Machinist preemption and, as explained above, is wholly distinguishable on the facts from the present case. Plaintiff also cites briefly to Chamber of Commerce of

<u>U.S. v. Bragdon</u>, which found preempted an ordinance establishing a detailed prevailing wage scheme for certain workers engaged in private construction projects on the grounds that it was highly invasive of the collective bargaining process. 64 F.3d 497 (9th Cir. 1995). However, the Ninth Circuit has subsequently stated that <u>Bragdon</u>'s holding was limited to "extreme situations, when [state substantive labor standards] are 'so restrictive as to virtually dictate the results of' of collective bargaining." <u>Associated Builders and Contractors of Southern California, Inc. v. Nunn</u>, 356 F.3d 979, 990 (9th Cir. 2004) (quoting <u>Bragdon</u>, 64 F.3d at 501). <u>Associated Builders</u> also made clear that the holding in <u>Bragdon</u> was applicable only to prevailing wage laws, and not minimum wage laws such is at issue here. 356 F.3d at 991 fn 8. Plaintiff offers no direct argument as to why the holding in <u>Bragdon</u> is nonetheless applicable to the present Ordinance, leaving the Court to guess. The central similarity between the Ordinance at issue here and that at issue in <u>Bragdon</u> that Plaintiff implies is that each were issued pursuant to the state's regulatory authority and are applicable only to limited industries as opposed to being laws of general applicability. However, though <u>Bragdon</u> discussed this fact as relevant to its preemption analysis, the Ninth Circuit has subsequently recognized that "it is now clear in this Circuit that state substantive labor standards, including minimum wages, are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market." <u>Associated Builders</u>, 356 F.3d at 990. Therefore, again, on the argument presented the Court has no basis to conclude that Plaintiff's <u>Machinist</u> preemption argument will prevail.

                    3.    Retroactivity


        Plaintiff also raises a concern that the Ordinance may be applied
retroactively to a time before the Ordinance was adopted as a result
of the delay in its implementation. (App., 18-20.) Any argument as to
retroactive application of the Ordinance is subject to dismissal for
lack of ripeness at this time, however, as Plaintiff makes no assertion
that anyone seeks at this time to apply the Ordinance in such a
fashion. Should Defendant or some interested third-party seek to have
the Ordinance applied retroactively,  Plaintiff may at that time seek
relief against such application.


    **D.  Remaining Equitable Factors**


        As Plaintiff has failed to meet its burden of offering argument
demonstrating some modicum of  likelihood of success with regard to any
of its claims, the Court cannot  find a temporary restraining order
justified. Therefore, the Court need not undertake analysis of the
remaining equitable factors or of Defendant's remaining defense at this
time.

///

///

16

1    **III.**   **CONCLUSION**

2

3       The Court denied Plaintiff Hilton's temporary restraining order

4 for the reasons stated above. At such time as Defendant chooses to

5 file a dispositive motion and Plaintiff presents clearer and more

6 comprehensive argument in support of its claims, the Court will

7 undertake further analysis of Plaintiff's position.

8

9

10       IT SO ORDERED.

11 DATED:    August 12, 2008                              

12                           STEPHEN V. WILSON
                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28